FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 28 2004
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
RANDY WILLIAMS,

               Petitioner,

-against-

WILLIAM PHILLIPS,

               Respondent.
----------------------------------------x

**REPORT AND RECOMMENDATION**
02-CV-5882 (SJ) (LB)

BLOOM, United States Magistrate Judge:

The Honorable Sterling Johnson, Jr., Senior United States District Judge, referred this *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to the undersigned for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons that follow, it is respectfully recommended that the petition be denied.

## BACKGROUND

I. Facts

On the night of January 22, 1996, petitioner Randy Williams ("Petitioner") was in his group home on Staten Island when another resident, Damien Williams ("Damien"), told him that he knew a man that they could rob. (Pl. 3)[1]. Damien told petitioner that he "had robbed this man before, and that he wanted to kill him." (Pl. 3). Sometime between 11:30 p.m. on January 22, 1996 and 1:00 a.m. on January 23rd, petitioner, along with Damien and another resident of the group home, Michael Depallo ("Depallo"), entered the home of 71 year old Gus Ferrara

---

[1] "Pl. __" refers to pages of petitioner's plea transcript which is found at pages 7-25 of Respondent's Exhibits.



("Ferrara") at 1212 Clove Place, Staten Island, New York, through a rear window. (Pl. 3-4). Damien and Depallo repeatedly stabbed Ferrara with a knife and scissors, bludgeoned him with a shovel and ransacked his home. (Pl. 4). A white clock radio and $120 in cash was taken from Ferrara's home. (Pl. 5.) On the morning of January 23, 1996, Ferrara's daughter discovered his body.

On January 24, 1996, petitioner, Damien and Depallo confessed to the crime in oral, written and videotaped confessions. Affidavit in Opposition to Petition for a Writ of Habeas Corpus at 3. ("Affidavit in Opposition"). Petitioner and his co-defendants were charged with two counts each of Murder in the Second Degree, Burglary in the First Degree, and Robbery in the First Degree, as well as related crimes. Richmond County Indictment No. 97/96.

II. Procedural History

A. Pretrial Motions

On March 13, April 15, September 25, November 21 and 25, and December 11, 1997, Huntley and Mapp[2] hearings were held. (R. 1).[3] On April 9, 1998, petitioner's motion to suppress his confessions to the police was denied. (R. 1-6). Richmond County Supreme Court Justice John Leone found that petitioners's statements were voluntary and that Detective Patrick Savage's questioning of petitioner at the group home was not custodial in nature. (R. 3-5). He also found that petitioner's incriminating statements were given after the administration of

---

[2] A Huntley hearing is held to determine whether a defendant's confession was voluntary. People v. Huntley, 15 N.Y.2d 72 (1965). In a Mapp hearing, the court decides whether evidence was seized in violation of the Fourth Amendment of the U.S. Constitution. Mapp v. Ohio, 367 U.S. 643 (1961).

[3] "R. __" refers to pages of Respondent's Exhibits.

2

Miranda warnings at the 120th Precinct, and that any possible taint from the failure to give those warnings prior to that time was "removed by the pronounced (three-hour) break in questioning which resulted from his arrest and transfer to the 120th Precinct, dinner, the administration of Miranda warnings, and the exhibition (to [petitioner]) of an incriminating statement signed by a co-defendant [citations omitted]." (R. 3-5). The court further held that "[n]o independent challenge has been directed towards the defendants' videotaped statements, which were in any event voluntary beyond a reasonable doubt." (R. 5).

B. Plea

On April 23, 1998, the day petitioner was scheduled to stand trial in Richmond County Supreme Court, petitioner pled guilty to one count of Murder in the Second Degree with an agreed upon sentence of 20 years to life. (Pl. 1-19). The count charged that "during the course of a burglary in which [petitioner] was a participant, that a death was caused through the conduct of one of his fellow participants, the co-defendants in this case, and that that death was caused by these participants during the course and commission of that burglary of the home of Mr. Gus Ferrara." (Pl. 2-3). As a factual predicate to the guilty plea, the court relied on the first of two of petitioner's written confessions which implicated petitioner in the felony murder of Ferrara. Petitioner's defense attorney, Paul Lemole, stated that "the defendant's indicating that he participated in a burglary of this man's house and physically did not participate in causing the man's death, but understands under Count Three, that felony murder does not require him to physically participate in the man's death and admits that the man's death was caused or came about during the commission of the burglary which he was committing with Depallo and Damien Williams." (Pl. 5).

3

C. Sentence

On May 5, 1998, petitioner appeared in court for sentencing. Petitioner informed the court that he had been under "extreme duress by the police of the 120th which is why I made all the statements and the fear of my co-defendant, Mike DePallo . . . Mike DePallo put a knife to my throat and told me he could kill me if I didn't take part in the burglary which resulted in the death of Mr. Ferrara." (R. 28). Petitioner further stated that he "accept[ed] the consequences of [his] actions and all [petitioner was] asking for is the facts to be heard and a fairer sentence than 20 to life which is too much to do for a crime that I was forced to be a part of. I assure you I would have - - I would have never accompanied Damien and Mike if Mike had not forced me." (R. 29-30). As a result of petitioner's statement, the judge adjourned petitioner's sentencing and by notice of motion dated June 5, 1998, petitioner sought to withdraw his guilty plea. (R. 30, 31). By Order dated June 29, 1998, petitioner's motion was denied. (R. 41). The court found that "[n]otwithstanding the defendant's belated claim of the 'potential defense' of duress, it is apparent that no credible support would or could be forthcoming from co-defendant DePallo who testified at his own trial that he did not participate in the crime and was not even present in the vicinity at the time [and the] record is devoid of any suggestion that the defendant's plea was anything but knowingly, intelligently and voluntarily entered." (R. 43). On June 29, 1998, petitioner was sentenced in accordance with his negotiated plea to 20 years to life in prison. (R. 44-51).

D. Post Conviction

Notwithstanding the waiver of his right to appeal in his plea, petitioner, with assistance of assigned appellate counsel, appealed his sentence to the Appellate Division, Second Department,

4

arguing that his sentence was excessive and should be reduced in the interest of justice. (R. 52, 53-61). Petitioner also sought permission to file a *pro se* supplemental brief, but the Appellate Division denied his request. By Decision and Order dated August 28, 2000, the Appellate Division affirmed petitioner's sentence. People v. Williams, 275 A.D.2d 598 (2d Dept. 2000). (R. 75). Petitioner did not seek leave to appeal to the New York Court of Appeals.

On December 10, 2001, petitioner filed a motion to vacate the judgment pursuant to § 440.10 of the New York Criminal Procedure Law (McKinney 1994) ("440 motion") arguing that he was denied the effective assistance of counsel at his Huntley hearing because his lawyer did not adequately cross-examine Detective Patrick Savage. (R. 102-38). By affirmation dated January 22, 2002, the People opposed petitioner's motion, arguing that petitioner's claims were procedurally barred and without merit. (R. 76-85).

On July 9, 2002, petitioner's 440 motion was denied in its entirety. (R. 86-87). The court held that because of petitioner's unjustifiable failure to raise his ineffective assistance of a counsel claim in his appeal, denial of petitioner's motion was mandated by C.P.L. §440.10(2)(c). Further, the court held that "petitioner waived his right to appeal and cannot use C.P.L. §440.10 as a substitute for an appeal." (R. 86). In addition to petitioner's claim being procedurally barred, the court held that

> [e]ven if the court were to decide this motion on the merits rather than on the procedural grounds discussed above, the same result is obtained. . . . because under all the circumstances attending the case there is no reasonable possibility that the allegations are true. The court is satisfied, based on a review of the record, that defense counsel's representation of the defendant exceeded the constitutional requirements for effective assistance of counsel and petitioner's motion is nothing more than a simple disagreement with strategies, tactics or the scope of possible cross-examination.

(R. 87). Petitioner sought leave to appeal from the July 9, 2002 order, but the Appellate Division denied the motion by decision and order dated October 16, 2002. (R. 88). Petitioner's application for reargument was likewise denied by order dated February 23, 2003. (R. 89).

E. The Instant Petition

On October 23, 2002, petitioner filed the instant *pro se* petition seeking federal habeas review. By Order dated November 16, 2002, the Honorable Sterling Johnson directed petitioner to show cause by written affirmation why the petition should not be dismissed as time-barred. On December 20, 2002, petitioner filed his affirmation. By Order dated January 29, 2003, this Court ordered a limited response to the petition regarding the timeliness of the petition under 28 U.S.C. §2244(d). On February 20, 2003, respondent moved to dismiss the petition as time-barred. This Court ordered the parties to submit proof regarding the service of the Appellate Division's August 28, 2000 affirmance of petitioner's judgment of conviction on petitioner or his counsel. On June 20, 2003, petitioner opposed respondent's Motion to Dismiss on timeliness grounds, arguing that the statute of limitations should be equitably tolled.

By Order dated August 1, 2003, the Court held respondent's motion to dismiss the petition as untimely in abeyance and directed respondent to answer the petition on the merits and to file the state court record. Petitioner seeks relief on the ground that he was denied effective assistance of counsel at his Huntley hearing, which was presented to the state court in petitioner's C.P.L. §440.10 motion. Petitioner specifically argues that there was testimony available to support his claim that he was questioned "for numerous hours without benefit of Miranda warnings and was only provided Miranda after agreeing to tell officer whatever he wanted to know ... however, counsel never utilized such testimony to show the need for suppression. Due

to counsel's negligence he led [petitioner] to believe that [there] was no evidence to support his claim and his only option would be to plead guilty." (Pet. 5).

**DISCUSSION**

I. Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, provides, in relevant part, that a prisoner must file a federal habeas corpus petition challenging a state court judgment of conviction within one year of the date the judgment becomes final. 28 U.S.C. § 2244(d)(1)(A).[4] A judgment is considered final upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or - if the prisoner elects not to file a petition for certiorari - the time to seek review via certiorari has expired." Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001), *cert. denied*,122 S.Ct. 279 (2001). The limitations period is tolled during the pendency of a properly filed request for state post-conviction relief or collateral review. 28 U.S.C. § 2244(d)(2); Artuz v. Bennett, 531 U.S. 4 (2000). Courts may also equitably toll the limitations period in certain circumstances. However, equitable tolling only applies where "extraordinary circumstances prevented [a petitioner] from filing his petition on time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam), *cert. denied*, 531 U.S. 840 (2000).

---

[4] The one-year limitations period may also run from the date an impediment to filing the petition was removed, the date on which the constitutional right was initially recognized by the Supreme Court and made retroactive to cases on collateral review, or the date on which the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. §§ 2244(d)(1)(B), (C), (D). None of these alternate dates is applicable here.

7

Here, petitioner's sentence was affirmed by the Appellate Division on August 28, 2000. Petitioner had 30 days to seek leave to appeal to the Court of Appeals, but failed to do so. Therefore, petitioner's conviction became final on September 27, 2000, when the time to make that application expired. See N.Y. Crim. Proc. Law § 460.10(5)(a). Therefore, the instant petition, filed October 23, 2002, is untimely.[5]

Petitioner filed a post conviction motion on December 10, 2001. However, § 2244(d)(2) does not start the one-year statute of limitations period to run anew. Rather, the tolling provision under § 2244(d)(2) applies only if petitioner's post-conviction motion was pending within the one-year grace period, and excludes from the limitations period only the time the motion remained undecided. Smith v. McGinnis, 208 F.3d 13, 16 (2d Cir.) (*per curiam*), cert. denied, 531 U.S. 840 (2000). Petitioner's motion to vacate his conviction did not toll the limitations period since the statute of limitations had already lapsed by the time petitioner filed his motion on December 10, 2001. Therefore, the tolling provision under § 2244(d)(2) does not save the instant petition from being time-barred.

Petitioner argues that he is entitled to equitable tolling because, "throughout the preparation of his State Court Motion to Vacate he was, and still is, suffering from a mental condition, of which he believes to be neurological in nature, that rendered him mentally incompetent and deprived him of the mental capacity needed in preparing complicated legal claims." Response to the People's Motion to Dismiss on Timeliness Grounds at p. 2 (Response

---

[5] Petitioner argues that he did not become aware of the Appellate Division's order until September 15, 2000, when he received a letter from his lawyer, dated September 6, 2000, informing him of the Appellate Division's decision. However, giving petitioner the benefit of the doubt and calculating the one-year period from the September 15, 2000 date, the instant petition would still be untimely.

8

to Motion to Dismiss"). Petitioner also states that he has been "suffering from the effects of this condition for years, and it became noticeable after he began experimenting with drugs such as marijuana and alcohol at an early age." Response to Motion to Dismiss at p. 4.

Petitioner's allegations of illness are insufficient to satisfy the extraordinary circumstances necessary to toll the statute of limitations period. Smith 280 F.3d at 17. As stated in Rhodes v. Senkowski, 82 F.Supp.2d 160, 173 (S.D.N.Y. 2000):

> physical or mental illness could toll the AEDPA's one-year time period to file a habeas corpus petition; however, a petitioner must allege more than the mere existence of physical or mental ailments to justify equitable tolling. A petitioner has the burden to show that these health problems rendered him unable to pursue his legal rights during the one-year time period.

Rhodes at 173. Petitioner states that in 2000, while at Green Haven Correctional Facility, he was seen by a doctor for his complaints and was prescribed an anti-depressive medication, although he claims his condition is not psychiatric in nature. Response to Motion to Dismiss at pp. 4-5. Petitioner was also subsequently seen by both a neurologist and psychologist. Id. On March 26, 2002, petitioner had a brain MRI and on March 27, 2002, an EEG test, both as ordered by the neurologist. Response to Motion to Dismiss at Exhibit C. The clinical findings of both reports were normal. Id. Moreover, despite petitioner's assertions, doctors have not diagnosed petitioner with any neurological condition or seen the need for additional testing. Id.

"A petitioner's allegations of illness must be supported by evidence and not based merely on the petitioner's own conclusions." Barbosa v. USA, 2002 WL 869553, at *2 (S.D.N.Y May 3, 2002). See also Torres v. Miller, 1999 WL 714349, at *8 (S.D.N.Y. August 27, 1999) (conclusory allegations of physical and mental illness insufficient to justify equitable tolling). Thus, petitioner's allegations regarding his alleged medical condition are insufficient to support

9

equitable tolling and do not establish that he was incapable of filing a timely habeas petition. It is therefore recommended that the petition be dismissed as time-barred.

II. Ineffective Assistance Claim is Procedurally Barred

Even if the petition was not time-barred, petitioner would not be entitled to habeas relief as the ground he raises is procedurally barred. Federal courts may not review state court decisions that rest on an adequate and independent state ground. Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); Harris v. Reed, 489 U.S. 255 (1989); Jones v. Stinson, 229 F.3d 112, 117 (2d Cir. 2000). For federal review to be barred, "[t]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." Harris, 489 U.S. at 261-62 (internal quotation marks and citation omitted). To determine whether the state court actually relied on an adequate and independent state ground, the federal habeas court looks to the last state court to review the matter to determine whether it plainly stated its intention to decide the issue on state procedural grounds. Jones, 229 F.3d at 118.

A petitioner may overcome a procedural bar by demonstrating (1) cause for the default and actual prejudice as a result of the trial court's error, or (2) that there was a fundamental miscarriage of justice, *i.e.*, that petitioner is actually innocent. See Coleman, 501 U.S. at 749-50. To demonstrate cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule ... ." Murray v. Carrier, 477 U.S. 479 at 488 (1986). As for prejudice, petitioner must show that the error in the state court "worked to [petitioner's] *actual* and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original). Although "[t]he cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice," Dretke v. Haley, __ U.S. __, 124

10

S.Ct. 1847, 1852 (May 3, 2004) (citation omitted), fundamental miscarriage of justice is a rare exception to demonstrating cause and prejudice, and a court should apply it only in the "extraordinary case." See Schlup v. Delo, 513 U.S. 298, 321 (1995).

The last state court to review petitioner's claim of ineffective assistance of counsel was the New York Supreme Court, Richmond County, which held:

> C.P.L. § 440.10(2)(c) states the court must deny a motion to vacate a judgment when, although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him. Petitioner's motion alleges ineffective assistance of counsel and is primarily grounded in the Huntley hearing minutes. Petitioner did not raise this issue on appeal. The petitioner has failed to justify the failure to raise this issue on appeal. Therefore, this court must deny the motion pursuant to C.P.L. § 440.10(2)(c). Moreover, the petitioner waived his right to appeal and cannot use C.P.L. § 440.10 as a substitute for an appeal (citation omitted). Even if the court were to decide this motion on the merits rather than on the procedural grounds discussed above, the same result is obtained. . . . Additionally, the court is satisfied, based on a review of the record, that defense counsel's representation of the defendant exceeded the constitutional requirements for effective assistance of counsel and petitioner's motion is nothing more than a simple disagreement with strategies, tactics or the scope of possible cross-examination (citation omitted).

(R. 86, Decision and Order of Richmond County Supreme Court, dated July 9, 2002).

New York Criminal Procedure Law § 440.10(2)(c) prohibits review of claims raised for the first time in a motion to vacate when the claims should have been raised on direct appeal. New York Criminal Procedure Law § 440.10(2)(c) is an adequate and independent state ground that bars federal habeas review. See Arce v. Smith, 889 F.2d 1271, 1273 (2d Cir. 1989) (federal habeas review precluded when the state court invoked the state procedural bar of N.Y. Crim. Proc. Law § 440.10(2)(c) which was a "clear holding").

11

Petitioner does not assert any viable cause for failing to raise any of his claims on direct appeal, nor does petitioner allege facts that establish a fundamental miscarriage of justice due to actual innocence. See Strogov v. Attorney Gen. of the State of New York, 191 F.3d 188, 193-94 (2d Cir. 1999) (citing Murray, 477 U.S. at 495-96).

The court's alternative holding, which stated that defense counsel's representation of the defendant exceeded the constitutional requirements for effective assistance of counsel does not avoid the application of the procedural bar doctrine. "The Second Circuit has made clear that 'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.'" Ferguson v. Walker, No. 00 Civ. 1356, 2002 WL 31246533, at *11 (S.D.N.Y. Oct. 7, 2002) (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 2000)); accord, Harris, 489 U.S. at 264 n.10; Garcia v. Lewis, 188 F.3d 71, 77-82 (2d Cir. 1999); Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996). Thus, the court's alternative holding, which rejected petitioner's ineffective assistance of counsel claim on the merits, does not avoid the application of the procedural bar doctrine. See Harris, 489 U.S. at 264 n.10 ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" as long as it "explicitly invokes a state procedural bar rule as a separate basis for decision") (emphasis in original).

Even if the Court were to find the instant petition timely, because the state court here expressly relied on New York Criminal Procedure Law § 440.10(2)(c) when denying petitioner's ineffective assistance of counsel claim and because petitioner has failed to show cause and prejudice for the procedural default, Coleman, 501 U.S. at 749-50; Wainwright v. Sykes, 433

U.S. 72, 87 (1977), or that failure to consider this claim will result in a fundamental miscarriage of justice, Murray, 477 U.S. at 495; Engle v. Isaac, 456 U.S. 107, 135 (1982), petitioner's ineffective assistance of counsel claim would be denied as procedurally barred.[6]

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 be dismissed as time-barred. Even if the Court were to find the petition timely, the Court should not reach the merits of his claims as petitioner has not demonstrated cause and prejudice or actual innocence to overcome the state procedural bar.

Because petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), *abrogated on other grounds*, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), *cert. denied*, 531 U.S. 873 (2000). It is also recommended that the Court certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636 (b)(1) and Rule 72 (b) of the Federal Rules of Civil Procedure, the parties shall have (10) days from service of the Report to file written objections.

---

[6] The Court need not reach the other arguments presented by the respondent.

13

See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be made to the District Judge within the ten day period. Failure to file a timely objection to this Report generally waives any further judicial review. DeLeon v. Strack, 234 F.3d. 84, 86 (2d. Cir. 2000); Spence v. Superintendent, Great Meadow Corr'l Facility, 219 F.3d 162, 174 (2d. Cir. 2000); see Thomas v. Arn, 474 U.S. 140, 155 (1985).

LOIS BLOOM
United States Magistrate Judge

Dated: Brooklyn, New York
       June 28, 2004

Copies to:

HONORABLE STERLING JOHNSON, JR.

Randy Williams
Petitioner Pro Se
#98A4232
Five Points Correctional Facility
State Route 96, P.O. Box 119
Romulus, NY 14541

Karen F. McGee
Assistant District Attorney
Office of the District Attorney, Richmond County
130 Stuyvesant Place
Staten Island, NY 10301-1968